## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

GRETA G. DAVIS,          )       CASE NO. 4:10CV2127
                       )

           PLAINTIFF,     )       JUDGE SARA LIOI
                       )

vs.                    )

                       )

KMART CORPORATION, et al.,    )      **MEMORANDUM OPINION**
                       )

                       )

          DEFENDANTS.   )
                       )

Before the Court is the motion for summary judgment filed by defendant Kmart Corporation (Doc. No. 38), plaintiff's memorandum in opposition (Doc. No. 39), and defendant's reply (Doc. No. 45).[1] For the reasons discussed below, the motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2010, plaintiff, represented by counsel, filed a personal injury lawsuit in the Trumbull County Court of Common Pleas alleging that, on September 7, 2008, while shopping at the defendant Kmart store, she slipped on a wet floor and fell on her hip and

---

[1] At the time this motion was being briefed, plaintiff was represented by counsel. On August 17, 2011, counsel moved to withdraw and, on September 14, 2011, the motion was granted. (*See* Doc. Nos. 42 and 46.) At the Court's direction, plaintiff was informed by her former counsel that the motion was at issue and under advisement. Although plaintiff is now proceeding *pro se*, the Court sees no reason to await the unlikely possibility of appearance of new counsel.

back, sustaining serious injuries. Defendant[2] timely removed the action to this Court on the basis of diversity jurisdiction. Following discovery, defendant filed its motion for summary judgment.

Plaintiff's deposition testimony establishes that she had just finished working a double shift as a home health aide, getting off at 7:00 a.m. on Sunday morning, September 7, 2008, when she stopped at Kmart. (Davis Dep. at 9-10.) She had worked most of Saturday and had gotten no sleep on Saturday night because she was also on duty for a second shift. (*Id*. at 10, 11, 104.) She went to the Kmart to purchase breakfast foods. (*Id*. at 15-16.) Plaintiff entered the store, got a shopping cart, and went to the bread department, the meat counter, and the bakery. (*Id*. at 16.) After she passed the bakery, she slipped and fell right by "two metal freezers with yogurt and stuff in there[...], right there by the orange juice." (*Id*. at 16-17.) At the time, she was wearing her "nurse's type uniform[,]" which consisted of a "[t]op and a pair of pants." (*Id*.) She was wearing tennis shoes. (*Id*. at 18.)

The only Kmart employee that plaintiff encountered prior to her fall was at the meat department. (*Id*. at 22.) She left the meat department, and "went on down to the bakery part[.]" (*Id*.) When she "started proceeding down by [...] the orange juices," (*id*.), she fell in the dairy aisle near the orange juice wall cooler and a second freezer. (*Id*. at 16, 52, 58, 60, 61.) As she described it: "the buggy went one way, I went another way, and boy, did I go down." (*Id*. at 22.) The bakery employee came to help her. Another nearby employee and a manager also came to assist. (*Id*. at 23.) When asked, she told them that she would "be all right." (*Id*.) She was then accompanied by the manager to a seating area at the front of the store, where she signed a "piece

---

[2] Initially there were two defendants: Kmart Corporation and Sears Roebuck & Co. The latter was voluntarily dismissed on February 23, 2011. (*See* Doc. No. 33.)

of paper," presumably an incident report.[3] (*Id*. at 23, 38.) A Kmart employee asked if she wanted to call an ambulance, but she declined, stating: "I think I'll be alright." (*Id*. at 39.) After that, she completed her shopping, buying orange juice, sausage, grits, and "a couple more things." (*Id*. at 24.)

Prior to her fall, plaintiff did not see anything on the floor, but she was not specifically looking at the floor because she was concerned with her shopping and with prices. (*Id*.) After plaintiff fell, the manager who came to assist noticed that there was milk on the floor; the manager immediately directed one of the employees to clean it up. (*Id*. at 23-25.) It was only then that plaintiff saw a "trail" of four or five "big drips" of milk each about "the size of a top of a coke can[.]" (*Id*. at 32-33.) She believes she slipped on the milk. She initially testified at her deposition that she might have fallen and the milk just happened to be there (*id.* at 34), and that she was "really guessing that it was the milk that caused [her] to fall." Later in her deposition, she corrected her testimony, insisting that she was certain that the milk caused her to fall. (*Id*. at 77-79.)

After plaintiff left Kmart, despite having told the Kmart employees that she did not need an ambulance or medical assistance, she went to Northside Medical Center complaining of left side pain and right groin pain, without numbness. (*Id.* at 63, 68.) Medical records indicate that the final diagnosis was "muscle strain groin." (*Id*. at 69.) She next sought follow up at Trumbull Memorial Hospital on November 2, 2008, claiming to be in "crucial pain." (*Id*. at 71, 73.)

During that two-month period plaintiff worked regularly, including a lot of overtime. (*Id.* at 71.) Although she was allegedly in constant pain, she never mentioned to her

---

[3] The statement she gave that day is attached to her deposition as Ex. A.

boss, Jeff Mirkin, that she had fallen at Kmart or that she was in pain. (*Id.* at 111, 112-13.) She merely told him that she "had problems in [her] back." (*Id.* at 113.)

## II. DISCUSSION

### A.    Summary Judgment Standard

Under Fed. R. Civ. P. 56, when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

**B.  Analysis**

Defendant argues that plaintiff is unable to establish liability under Ohio's well-developed premises liability law.

"[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). Defendant asserts that plaintiff cannot establish the first element, that of the existence of a duty.

At common law, the legal duty owed by a property owner depended upon the status of the person coming onto the property. Here, there is no dispute that plaintiff was a Kmart business invitee. "A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985) (citing *Campbell v. Hughes Provision Co.*, 153 Ohio St. 9 (1950)). "A shopkeeper is not, however, an insurer of the customer's safety." *Id*. Further, "a premises-owner owes no duty to persons entering the premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 80 (2003) (citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of syllabus).

"'Open and obvious' dangers are neither hidden, concealed from view, nor nondiscoverable upon ordinary inspection." *Kirksey v. Summit Cty. Parking Garage*, No. Civ. A. 22755, 2005 WL 3481536, at * 3 (Ohio App. 9 Dist. 2005) (citing cases). Ohio courts apply an objective, not subjective, standard to determine whether a danger is open and obvious. *Freeman v. Value City Dept. Store*, No. 2010 CA 00034, 2010 WL 3766806, at *3 (Ohio App. 5 Dist. Sept. 27, 2010). "The determinative issue is whether the condition is observable. Consequently, the dangerous condition at issue does not actually have to be observed by the plaintiff in order for it to be an 'open and obvious' condition under the law. Ohio courts have found that no duty existed in cases where the plaintiff did not notice the condition until after he or she fell, but could have seen the condition if he or she had looked." *Kirksey, supra*. (internal citations omitted).

In this case, plaintiff cannot establish that Kmart owed her a duty of care because, as is evident from her own deposition testimony, the spilled milk was an "open and obvious" danger, as that term is construed by Ohio courts. Plaintiff testified as follows:

Q.      [...] Before you fell, did you see anything on the floor?

A.      No.

Q.      Were you looking?

A.      No.

Q.      What were you looking at?

A.      What I was going to buy, if I was going to get it depending on the price, you know, I was looking -- I wasn't looking down on the floor.

* * *

Q.      When did you first see the milk on the floor?

A.      When they stood me up, we both seen it.

Q.      Describe to me what you saw?

A.      Milk on the floor.

Q.      How large an area was it on the floor?

A.      It was a trail.

Q.      A trail, like drips?

A.      Yes. Big drips though.

Q.      All right. Let's try and put some definition on big drips. The size of the top of this water bottle or smaller?

A.      Oh, it was bigger, it was bigger than that.

Q.      The size of the bottom of the water bottle?

A.      Yeah. Like the bottle.

Q.      Okay. So almost the size of the top of a coke can, right?

A.      Yeah.

Q.      How many of these drips did you see?

A.     About four of [sic] five of them. Like I said, they were in trails.

Q.     And where was the trail heading?

A.     Toward the milk.

(Davis Dep. at 24, 32-33.)

This factual scenario is similar to the facts in *Parsons v. Lawson Co.*, 57 Ohio App. 3d 49, 51-52 (Ohio App. 5 Dist. 1989), where a patron of defendant's store slipped and fell after stepping on boxes in the aisle of the store. When questioned, the plaintiff testified that, although there were "a lot" of boxes, he did not see them because he was looking into the beverage coolers to pick out what he wanted to buy. He admitted that, had he been looking where he was walking instead of into the cooler, he would have seen the boxes. But he insisted: "I was concentrating on what I had wanted there in the coolers." *Id.* Similarly, plaintiff Davis was also not watching where she was walking, but was looking at "what [she] was going to buy[.]"

Davis argues that milk drops on a white floor are not open and obvious.[4] As pointed out by an Ohio appellate court, "[this] theory of negligence [...] has no logical end point." *Kolsto v. Old Navy, Inc.*, No. C-030739, 2004 WL 1486114, at * 4 (Ohio App. 1 Dist. July 2, 2004) (affirming trial court's grant of summary judgment in favor of defendant-appellee on plaintiff-appellant's claim that she was injured when she slipped and fell on a clear plastic coat hanger on the floor of defendant-appellee's store) ("Old Navy correctly maintains that

---

[4] Plaintiff also asserts that, at the very least, there is a material question of fact as to the open and obvious danger of the spilled milk. On this record, using plaintiff's own testimony that the milk drops were the size of the top of a Coke can rather than defendant's witnesses' testimony that they were the size of a dime, there is no material factual dispute. Taking plaintiff's testimony as true, only one conclusion can be drawn: the drops were large enough to be open and obvious. "Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Klauss v. Glassman*, No. 84799, 2005 WL 678984, at * 3 (Ohio App. 8 Dist. Mar. 24, 2005).

Kolsto's argument is tantamount to presuming a grocery store is negligent for having a white floor simply because a customer might slip on spilled milk.").

Even if the milk drops were not "open and obvious," Davis would still have to establish that Kmart created the condition, had knowledge of the condition, or that the condition existed for a sufficient amount of time before plaintiff fell to place Kmart on notice of its duty to warn of the condition. A business owner has "the duty to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor which a patron should not be expected to discover or protect himself against." *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359 (1979). "Accordingly, the proprietor's duty is normally predicated upon his superior knowledge of a dangerous condition on his premises." *Id*. (overruling summary judgment where the question as to whether the operator of a roller coaster had a duty to warn that the nature of the ride was such that the patron might be injured in the normal course of the ride's operation turned on questions of fact from which it might be concluded that the operator knew or should have known that the patron had a disability of such nature that the danger of injury from normal operation of the ride was reasonably foreseeable). "Constructive notice cannot be proved without a factual basis that the hazard existed for a sufficient time to enable the exercise of ordinary care." *Alvarez v. Natl. City Bank*, No. 24292, 2009 WL 249785, at * 2 (Ohio App. 9 Dist. Feb. 4, 2009) (citations omitted) (affirming summary judgment for the defendant because plaintiff had failed to demonstrate that a genuine issue of material fact existed regarding whether the defendant knew that the rug near the door, on which plaintiff had slipped, was a hazard).

Davis argues in opposition to the motion for summary judgment that she has "produced evidence that Kmart was negligent, should have discovered the milk on the floor, had two employees approximately in the area of the trail of milk and that based on the time frame as

9

to how long Ethel Markel worked in the display area to bring out baked goods) (sic) and the other unnamed employee each of which had an admitted an elevated duty to inspect the floor, that the condition existed for a sufficient amount of time before plaintiff fell, a genuine issue of material fact." (Opposition at 24, citing Dasher Dep. at 40.) Although Davis makes these arguments, she does not support them with evidence from the record.[5]

Plaintiff argues that there are "three distinct" time frames when the milk could have leaked: (1) "[t]he length of time necessary to drain a half gallon of milk in dime size drops" (although plaintiff testified that the drops were much larger than that); (2) "[t]he length of time necessary to establish the trail of milk through the store from the milk display through aisles (given the shopping pace of an average shopper) to the cashier's[;]" and (3) "[t]he length of time (or before that time) the employees were working in the bakery department without seeing any customers in the dairy aisle until the time of the reported fall to Loss Prevention (or to such longer time) as the night-time cleaning staff left at the latest 7:00 a.m., or such time as Shawn Dasher could not testify when the cleaning staff left the dairy aisle from 11:00 p.m. the prior night (Saturday) to 7:00 a.m. Sunday morning." (Opposition at 25-26.)

Shawn Dasher, Kmart's loss prevention employee, testified at his deposition that, after plaintiff's fall, he discovered that a customer at the check-out counter had a leaking gallon of milk and had asked to have it replaced.[6] However, there is no evidence in the record that this particular gallon of milk was actually the source of the milk spill which may have caused plaintiff to fall; that would be pure conjecture. No one inquired of the complaining customer as

---

[5] The citation to Dasher's deposition is to testimony that all employees of Kmart are supposed to observe the condition of the floors, although Kmart does hire an outside service to clean the floors every day.

[6] Dasher saw the leaking container and testified that "not much" milk had leaked out. Dasher told an employee in the dairy department to clean up the spill. (Dasher Dep. at 27-29.)

to the route he or she had taken through the store to ascertain whether that customer had even been in the aisle where plaintiff fell and, if so, when in relation to the time of plaintiff's fall.

There is no evidence in the record as to how long it might take a gallon of milk to drain. Presumably, that would depend on many factors, for example, where the leak was in the gallon container, how large the leak was, and how long it had been leaking.

As to the second length of time, the time necessary to establish a trail of milk through the store from the milk display to the check-out counter, there is also no evidence. One would need to know the exact route, the pace at which the customer was walking, whether the customer had stopped anywhere, the size of the hole in the gallon jug, and other variables. Even if this time frame were known or knowable, that would not establish how long the milk had been on the floor before plaintiff fell.

The last time frame posited by the plaintiff is the length of time that the bakery employees were working before noticing the spill. The bakery employee, Ethel Markel, testified that she had not seen the milk until it was pointed out to her after plaintiff's fall and she did not know how it got there or how long it had been there. (Markel Dep. at 14; Markel Aff. ¶ 5.) She did not recall the last time she saw a person in the aisle before plaintiff fell. (*Id*. at 27.) She also states that she was working for only about five minutes when she observed plaintiff fall. (Markel Aff. ¶ 2.) This is consistent with testimony that Markel started work at 7:30 a.m. (Markel Aff. ¶ 1), that plaintiff entered the store around 7:15 or 7:20 a.m., and that plaintiff had been shopping about 10 minutes when the fall occurred (Davis Dep. at 16, 18.)

These three time frames are actually irrelevant to the analysis. The issue is whether (and, if so, when) the defendant knew about the spilled milk. There is absolutely no evidence in the record to suggest how long the milk had been spilled in the aisle so as to

determine whether the period of time was long enough that defendant should have discovered it had its employees been being vigilant. Even plaintiff acknowledges that "evidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care." (Opposition at 25, citing *Combs v. First Natl. Supermarkets, Inc.*, 105 Ohio App.3d 27 (Ohio App. 8 Dist. 1995).)

In light of the above, plaintiff has failed to demonstrate that defendant had any duty. Therefore, she has failed to establish one of the necessary elements of a negligence action and defendant is entitled to summary judgment.

### III. CONCLUSION

For the reasons discussed herein, defendant's motion for summary judgment (Doc. No. 38) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: October 7, 2011

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**